CHANDLER *v.* RICHARDSON LUMBER CO.

MORTGAGES—DEED AS SECURITY—RECORD—TAXATION.

Complainant executed a warranty deed to a trustee of two of his creditors to secure an indebtedness owing to them. He claimed later to have paid the debt and received back a quitclaim deed which he omitted to place upon record. No notice appeared of record to show that the relation of mortgagor and mortgagee existed. The land was returned for unpaid taxes, was purchased by one McDade, who then acquired the title from the trustee and alleged mortgagee by quitclaim deed which he caused to be recorded. After the expiration of the period of redemption, the bill of complaint was filed to clear up the cloud upon the alleged title of complainant. *Held,* that under Act No. 229, Pub. Acts 1897, as amended by Act No. 204, Pub. Acts 1899, the title of defendant, a grantee of the tax purchaser, was valid and the bill must be dismissed.

Appeal from Otsego; Sharpe, J. Submitted November 5, 1913. (Docket No. 72.) Decided July 24, 1914.

Bill by Merritt Chandler against the Richardson Lumber Company and another to quiet title to certain lands. From a decree for defendants, complainant appeals. Affirmed.

*Henry, Henry & Henry,* for complainant.

*Henry K. Gustin* and *Charles W. McGill,* for defendant Lumber Company.

*Grant Fellows,* Attorney General, *David H. Crowley,* Assistant Attorney General (*George L. Hauser,* of counsel), for auditor general.

MOORE, J. Complainant claims that on July 21, 1897, he was the owner of 200 acres of land in Otsego county, this State, described as the W. ½ of the E. ½, and the N. E. ¼ of the S. W. ¼ of section 24, town 32 north, range 1 west. The defendant the Richardson Lumber Company claims to be the owner of said lands by virtue of certain tax deeds, and also as holders of the title of record. The bill of complaint is filed to have the title of the defendant the Richardson Lumber Company declared void, and the title declared to be in the complainant. The cause was put at issue, and after a hearing the bill of complaint was dismissed. The case is brought here by appeal.

Because of the tax proceedings the auditor general was made a party, and he appears in this court by the attorney general.

In the reply brief of the solicitors for the complainant, we find the following:

"In our original brief we make no appeal from the decree of the circuit judge concerning the N. E. ¼ of the S. W. ¼ of section 24, T. 32 N., R. 1 west, being the description conveyed by the State land commissioner.

"And whatever we have said in our briefs in this case relates only to the interest in the west ½ of the east ½ of said section claimed by the defendant, the Richardson Lumber Company, and we do not understand the auditor general is interested in any way with this controversy."

This does away with the necessity of referring further to the 40 acres described.

The material questions of fact are not complicated. The law applicable to the case is not in doubt.

The complainant made a quitclaim deed of 920 acres of land, which includes the land in controversy here. The formal parts of the deed read:

"This indenture, made the 21st day of July, in the year of our Lord 1897, between Merritt Chandler and Rachael H. Chandler, his wife, of Onaway, Presque Isle county, Michigan, parties of the first part, and Willis N. Gilbert, trustee for Willis H. Gilbert and Elijah Hollenbeck, copartners, doing business as Hollenbeck & Gilbert, at Saginaw, E. S., Michigan, of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of $1,685.00 to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, do, by these presents, grant, bargain, sell, remise, release and forever quitclaim unto the said party of the second part, and to his heirs and assigns forever, all those certain pieces,  *  *  * together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining. To have and to hold the said premises as herein described, to the said party of the second part and to his successors, heirs and assigns, to the sole and only proper use, benefit and behoof of the said party of the second part, his heirs, successors and assigns forever."

It is the claim of complainant that this deed was in fact a mortgage, and that he afterwards paid the debt and secured and took back from the trustee a quitclaim deed. It will be observed that there is nothing in the paper itself indicating it is a mortgage. We again quote from the brief of counsel:

"The complainant is not without blame in the premises, but the only criticisms which can be made of his conduct from first to last are two:  (*a*) He neglected to record his deed from Gilbert;  (*b*) he failed to see that the taxes were paid on the lands."

In view of what happened these were very important omissions on the part of complainant. The

lands were sold repeatedly for taxes subsequent to the making of the deed to Mr. Gilbert, and tax deeds were issued to Thomas McDade. After he acquired these deeds, the following letter was written on August 31, 1901, to Mr. Gilbert:

"I understand that you own the west ½ of the northeast ¼, the west ½ of the southeast ¼, and the northeast ¼ of the southwest ¼ of section 24-31-1 west.

"Thomas McDade of this city has purchased a tax title against these lands amounting to their entire value, but under the statute he is compelled to give you notice whereby you would have a right to redeem, paying him 100 per cent. and $5 a description.

"Before I do this for him he wishes me to write you stating that he would rather pay you a little something for a quitclaim deed of the land, rather than to serve the notice, etc., upon you.

"I will be pleased to hear from you in reference to this matter.

"Yours truly,
"H. K. GUSTIN."

After further correspondence Mr. Gilbert, upon payment to him of $75, made a quitclaim deed of the lands to Mr. McDade, which was placed upon record. At this time complainant claims he had a quitclaim deed from Mr. Gilbert, which he had not put upon record, but that Mr. Gustin because of his relations with complainant must have known that Mr. Gilbert was trustee for the complainant, and that it is inequitable to permit the title to remain in defendants. Gustin denied any knowledge except what was disclosed by the public records.

The transaction as to the tax deeds must stand or fall by the provisions of Act No. 229, Public Acts of 1897, as amended by Act No. 204, Public Acts of 1899. This act, as it stood at the time of the purchase by Mr. McDade, and as amended by Act No. 204, Public Acts of 1899, contains substantially the following provisions:

Section 140 provides that no writ of assistance or other process for the possession of any land, the title to which had been obtained by tax sale after the 29th day of August, 1897, should be issued until six months after there shall have been filed with the county clerk of the county where the land is situated a return by the sheriff of said county showing that he had made personal service, or until substituted service had been made upon the grantee or grantees under the last recorded deed, in the regular chain of title to said land.

Section 141 of said act also provided that any grantee under the last recorded deed, to said lands, or any mortgagee named in the last recorded mortgage, or any assignee thereof of record, or any executor or administrator, heir, trustee, or guardian of such grantee, mortgagee, or assignee shall be entitled to receive from the person claiming under the tax deed a reconveyance of such tax-title interest under certain conditions.

Section 142 of Act No. 229, Public Acts of 1897, reads:

"No purchaser under any tax sale hereafter made, or of any State tax land or any State bid hereafter sold, shall enter into possession of the land so purchased until six months after he has given notice to the party or parties in interest as provided for in the preceding sections unless he shall have acquired from said parties their title thereto under conveyance from said party or parties or his or their interest in said land."

It is argued upon the part of the complainant that, inasmuch as Mr. Gilbert had quitclaimed to him before he deeded to McDade, McDade took no title by virtue of his quitclaim, citing many cases. These cases are not in point here.

It goes without saying that tax time comes at least once a year, and an owner of land should bear that fact in mind. If he fails to cause the taxes to be paid,

it follows of course that they will be sold. The tax purchaser has his rights and duties defined by statute, if he would become the absolute owner of the land.

The language of section 142, which we have quoted, is not ambiguous. When the tax purchaser has followed the provisions of the statute, and the time for redemption has expired, no court can help out the original owner, however great the difference may be between the expenditure made by the tax purchasers and the actual value of the land.

The decree is affirmed, with costs.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred. KUHN, J., did not sit.